UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
DONALD TESSIER,                     )
        Plaintiff,                  )
                                    )
v.                                  )    Civil Action No.10-CV-11944-LTS
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security     )
        Defendant.                  )
_____ )

ORDER ON PLAINTIFF'S MOTION FOR ORDER REVERSING DECISION OF
COMMISSIONER AND DEFENDANT'S CROSS MOTION FOR
ORDER AFFIRMING DECISION OF COMMISSIONER

March 20, 2012

SOROKIN, M.J.

The Plaintiff, Donald Tessier, seeks reversal of the decision by the Defendant, the Commissioner of the Social Security Administration ("the Commissioner"), denying him Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (Docket No. 13). The Commissioner seeks an Order affirming his decision. (Docket No. 15).

For the reasons set forth below, the Plaintiff's Motion to Reverse the Commissioner's Decision (Docket No. 13) is DENIED and the Commissioner's Motion for Order Affirming the Commissioner's Decision (Docket No. 15) is ALLOWED.

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

I.   BACKGROUND

   Procedural History

   On October 2, 2008, Tessier filed an application for DIB and SSI Benefits, alleging that he had been disabled since March 1, 2008. (Tr. 104-12, 113-16).[2] His applications were initially denied on October 27, 2008 (Tr. 56, 57), and were denied again upon reconsideration (Tr. 58, 59). Tessier then requested a hearing before the Administrative Law Judge ("ALJ"). (Tr. 76). Tessier appeared and testified at the hearing, held on April 12, 2010. (Tr. 23).

   The ALJ's decision found that Tessier was disabled beginning on March 1, 2008, and ending on May 1, 2009. (Tr. 18). The ALJ further found that since May 1, 2009, Tessier has been able to perform "unskilled sedentary work,"[3] and that such jobs are available in the national economy. (Tr. 17). The Decision Review Board selected Tessier's claim for Review. (Tr. 4). However, because the Decision Review Board did not act within the requisite ninety-day period, the ALJ's decision was effectively affirmed. (See id.). Having timely pursued and exhausted his administrative remedies before the Commissioner, Tessier filed a Complaint in this Court on November 12, 2010, pursuant to 42 U.S.C. § 405(g). (Docket No. 1). Tessier filed the Motion presently before the Court on May 23, 2011 (Docket No. 13), and the Commissioner filed a timely Cross Motion (Docket No. 15).

---

[2] "Tr. __" refers to the Administrative Transcript (Docket No. 9) at the page indicated.

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

2

Tessier's Medical History

Tessier was forty-three years old when he became disabled on March 1, 2008. (Tr. 104, 113). He has a high school education and past work experience as a mechanic, a service station attendant, and as a paving laborer. (Tr. 30). In 1996, while working as a mechanic for a truck repair service, a truck fell on Tessier and injured him. (Tr. 38). As a result of this injury, Tessier began to experience lower back pain. (Id.).

In early 2008, Tessier was working as a laborer for a paving company, a job requiring heavy lifting and carrying. (Tr. 39). On March 1, 2008, he became unable to work due to his back pain. (Tr. 39, 104). On March 30, 2008, Tessier was treated for lower back pain. (Tr. 231). Several weeks later, he was administered a steroid injection in an attempt to alleviate his pain. (Tr. 238). Tessier continued to complain of back pain (Tr. 257), and underwent a diagnostic/therapeutic procedure on May 6, 2008 (Tr. 259).

Around this time, Tessier's primary care physician, Dr. Brian Blanchette, referred him to a neurosurgeon, Dr. Efstathios Papavassiliou. (Tr. 187). On May 22, 2008, Dr. Papavassiliou conducted his initial evaluation of Tessier. (Id.). Later, on June 12, 2008, an MRI showed foraminal disc extrusion herniations at L5-S1[4], along with bilateral severe arthritis at L5-S1. (Tr. 188). Based on the results of this MRI, Dr. Papavassiliou recommended that Tessier proceed with a right L5-S1 microdiscectomy (id.), which was performed on June 17, 2008 (Tr. 189-91).

While the surgery initially alleviated Tessier's pain, in December 2008 he again suffered from severe back pain, and an MRI showed significant problems with his lumbar spine. (Tr. 312). Accordingly, Dr. Papavassiliou recommended that Tessier undergo a second surgery,

---

[4] "L5-S1" refers to lumbar segment 5 and sacral segment 1.

3

which was performed on January 12, 2009. (Tr. 271-73).

Although post-operation x-rays showed improvement (Tr. 278), Tessier's primary care physician reported on January 21, 2009, that Tessier stated he was unable to bend, sit, walk, or lift (Tr. 282). However, on February 26, 2009, Dr. Papavassiliou reported that Tessier was "doing very well," his "leg pain [was] completely gone," he had "minimal back pain," and had "full motor [strength] in both lower extremities." (Tr. 311). On April 30, 2009, Dr. Papavassiliou made a similar report, noting that while Tessier complained of some pain while sitting down, his x-rays looked "great," and he had "no leg pain anymore and legs [felt] great." (Tr. 310). Dr. Papavassiliou prescribed physical therapy to help Tessier strengthen his back muscles, which he believed caused Tessier's pain. (Id.).

On September 8, 2009, Tessier again complained of back and leg pain, and accordingly underwent EMG/NCV[5] testing. (Tr. 304). The test results showed only "mild chronic right L5-S1 radiculopathy." (Id.). The examiner recommended that Tessier continue to manage his symptoms as prescribed, and consider an epidural steroid injection pain clinic. (Id.). Several days later, an MRI showed fluid collection in the posterior laminectomy bed and the presence of overlaying muscular edema. (Tr. 318). The report stated that the findings in the MRI were "presumably post-operative, [but] occult infection [could not] be excluded." (Id.).

Tessier again met with Dr. Papavassiliou in October 2009. (Tr. 309). Dr. Papavassiliou's note regarding this visit is, to some extent, internally contradictory. (See id.). The note states on the one hand that Tessier reported to Dr. Papavassiliou that he could not work, and experienced back pain if he stood or sat for more than half-an-hour, and was thus forced to

---

[5] "EMG/NCV" signifies Electromyography/ Nerve Conduction Velocity.

lay on his stomach for most of the day. (Id.). However, the note also states that during the exam, Tessier reported that he had no problems, "no back pain," and that "his back pain [had] completely resolved." (Id.). During this examination, an MRI of Tessier's lumbar spine showed "post-operative changes and a small fluid collection" which was "nothing significant." (Id.). The physical exam "show[ed] full motor in both lowers." (Id.) Tessier also tested negative for radicular pain in a Straight Leg Raise. (Id.). Dr. Papavassiliou concluded that he did "not see anything surgical," and while "the nerve may still be recovering and . . . it may take up to 18 months to recover completely," he saw nothing on the MRI to explain Tessier's alleged symptoms. (Id.). Dr. Papavassiliou noted, "From what I understand, there is disagreement between the patient and his wife on how bad his symptoms are. His wife states that his symptoms are much worse than the ones he is describing, and I am very puzzled." (Id.).

On April 9, 2010, Tessier had a physical with his primary care physician, Dr. Blanchette. (Tr. 320). Tessier reported that he had spasms in his back and legs, and could not sleep. (Id.). Nonetheless, Dr. Blanchette checked off boxes on the physical examination form indicating that Tessier's physical was normal including normal for joints, range of motion, and "neuro" such as sensation, motor, and reflexes. (Id.). On the same day, Dr. Blanchette completed a "Medical Statement of Ability to Do Work-Related Activities." (Tr. 313). In this statement, Dr. Blanchette opined that Tessier could perform work requiring him to carry less than ten pounds occasionally, could stand or walk less than two hours in an eight-hour work day, and could sit for less than six hours in an eight-hour work day. (Tr. 313-14). The report also stated that Tessier had serious postural limitations, "severe disc degeneration," "nerve damage, [and] muscle atrophy." (Tr. 314). Finally, Dr. Blanchette opined that Tessier "can't sit in car or chair

5

more than ½ hr. at a time." (Id.).

   The State Agency Opinion

On February 3, 2009, Dr. Mark Colb completed a "Physical Residual Functional Capacity Assessment," based on a review of Tessier's medical records. (Tr. 294-301). Dr. Colb concluded that Tessier should recover the capacity to perform sedentary work before May 1, 2009. (Id.).

   The Administrative Decision

   a. Tessier was disabled from March 1, 2008, through April 30, 2009.

In assessing Tessier's request for disability benefits, the ALJ conducted the familiar five-step sequential evaluation process that determines whether an individual is disabled and thus entitled to benefits. See 20 C.F.R. § 404.1520; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). The ALJ found that Tessier had not engaged in substantial gainful activity since March 1, 2008. (Tr. 12).

At the second step, the ALJ must ask whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ determined that Tessier had the severe impairments of lumbar disc herniation, and degenerative disc disease. (Tr. 12).

Third, the ALJ must determine whether the claimant has impairments that meet or are medically equivalent to the specific list of impairments listed in Appendix 1 of Subpart P of the Social Security Regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant has an impairment that meets or equals one of the impairments listed in Appendix 1, and meets the duration

requirement, then the claimant is disabled.  Id.  The ALJ found that from March 1, 2008, through April 30, 2009, Tessier did not have an impairment or combination of impairments meeting or medically equivalent to an "Appendix 1 impairment." (Tr. 12).  The ALJ then proceeded to step four.

At the fourth step, the ALJ considers the claimant's residual functional capacity and the claimant's past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  Whenever, as here, there is a determination that the claimant has a significant impairment, but not an "Appendix 1 impairment," the ALJ must determine the claimant's residual functional capacity.  20 C.F.R. § 404.1520(e).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis, despite limitations from his impairments.  Id. § 404.1545.  Here, the ALJ found that from March 1, 2008, through April 30, 2009, Tessier had the residual functional capacity to perform sedentary work.  (Tr. 13).  However, the ALJ also found that Tessier was "unable to persist even at sedentary work activities due to persistent pain together with the recovery period from his lumbar surgeries."  (Id.).  The ALJ further found that from March 1, 2008, through April 30, 2009, Tessier could not perform the type of work that he performed in the past.  (Tr. 13).

At the fifth step, the ALJ asks whether the claimant's impairments prevent him from performing other work found in the national economy.  Id. § 404.1520(a)(4)(v).  At the fifth step, the ALJ found that from March 1, 2008, through April 30, 2009, "considering [Tessier's] age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that [Tessier] could have performed."  (Id.).  Accordingly, the ALJ found that Tessier was disabled from March 1, 2008, through April 30,

2009. (Tr. 14).

      b. Medical improvement occurred as of May 1, 2009.

Because the ALJ found that Tessier was disabled from March 1, 2008, through April 30, 2009, the ALJ was required to determine whether Tessier's disability continued through the date of the decision. See 20 C.F.R. § 404.1594. In making this determination, the ALJ must follow an eight-step evaluation process.[6] Id. § 404.1594(f). The first question is whether the claimant is engaging in substantial gainful activity. Id. § 404.1594(f)(1). At step two, the ALJ must ask whether the claimant "has an impairment or combination of impairments which meets or equals" an "Appendix 1 impairment." Id. § 404.1594(f)(2). The ALJ answered each of these questions in the negative. (Tr. 12, 15).

At step three, the ALJ must ask whether medical improvement has occurred. 20 C.F.R. § 404.1594(f)(3). Medical improvement is "any decrease in medical severity of [the] impairments," as established by improvement in "symptoms, signs, and/or laboratory findings." Id. § 404.1594(b)(1). The ALJ found that "medical improvement occurred as of May 1, 2009." (Tr. 14). The ALJ cited reports by both Dr. Papavassiliou and Dr. Blanchette, the results of the EMG/NCV testing performed on September 8, 2009, and an MRI performed on September 14, 2009, as evidence that Tessier's symptoms had improved. (Tr. 15).

Because medical improvement occurred, the ALJ's analysis proceeded to the fourth step.[7]

---

[6] Title II requires an eight-step evaluation process, 20 C.F.R. § 404.1594(f), while Title XVI requires a seven-step evaluation process, id. § 416.994(b)(5). The Title XVI process simply excludes the first step of the Title II process. This opinion will number the steps in accordance with the Title II eight-step process.

[7] Had no medical improvement occurred, the ALJ's analysis would have proceeded to step five. 20 C.F.R. § 404.1594(f)(3).

8

20 C.F.R. § 404.1594(f)(3). Here, the ALJ must determine whether medical improvement is related to the ability to do work, id. § 404.1594(f)(4), i.e., whether it results in an increase in the claimant's "functional capacity to do basic work activities . . . " id. § 404.1594(b)(3). The ALJ found that Tessier's medical improvement was related to his ability to do work. (Tr. 16).

The analysis then proceeded to the sixth step, which requires the ALJ to determine whether the claimant's current impairments, in combination, are severe. 20 C.F.R. § 404.1594(f)(6). The ALJ determined that "at all times relevant to this decision, [Tessier] has had the following severe impairments: lumbar disc herniation and degenerative disc disease." (Tr. 12).

The ALJ accordingly proceeded to step seven. At this step, the ALJ must assess the claimant's residual functional capacity based on the current impairments, and determine if the claimant is able to perform past relevant work. 20 C.F.R. § 404.1594(f)(7). In determining Tessier's residual functional capacity, the ALJ "considered all symptoms and the extent to which [Tessier's] symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 15). In considering the claimant's symptoms, the ALJ must first determine whether there is an "underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." 20 C.F.R. § 404.1529(b). The ALJ found that there was. (Tr. 16). Then, the ALJ must "evaluat[e] the intensity and persistence of [the claimant's] symptoms" and determine the extent to which they limit the claimant's "capacity for work." 20 C.F.R. § 404.1529(c)(1). The ALJ found that Tessier's allegations regarding the "pain and limiting effects" of his symptoms as of May 1, 2009, were not credible. (Tr. 16). The ALJ held that the objective evidence did not

9

show a medical impairment that could account for the severe pain and limitations that Tessier claimed. (Id.). To support this conclusion, the ALJ cited Dr. Papavassiliou's October 8, 2009, observations that Tessier had "no problems," "no back pain," and his report that Tessier tested negative for pain in the Straight Leg Raise. (Id. (citing Ex. 11F)). Based on her assessment of Tessier's symptoms, the ALJ determined that as of May 1, 2009, Tessier "had the residual functional capacity to perform sedentary work . . . except that he requires the opportunity to alternate postural position between sitting and standing every thirty minutes, and can only occasionally climb, balance, stoop, kneel, crouch, and crawl." (Tr. 15). Thus, the ALJ found that, given Tessier's residual functional capacity, Tessier was unable to perform past relevant work. (Tr. 17).

Finally, the ALJ proceeded to step eight. At this step, the ALJ must determine whether other work exists that the claimant can perform, given his residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1594(f)(8). If the claimant can perform other work, he is no longer disabled. Id. The ALJ found that as of May 1, 2009, Tessier "has been able to perform a significant number of jobs in the national economy." (Tr. 17). Accordingly, the ALJ found that Tessier was not disabled as of May 1, 2009. (Id.).

## II. STANDARD OF REVIEW

The District Court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, the Court may not disturb the Commissioner's findings where they are supported by substantial evidence and the Commissioner has applied the correct legal standard. Id. Likewise, where the Commissioner's finding is not supported by substantial

10

evidence, or is the result of an error of law in the evaluation of the claim, the Court will not uphold the Commissioner's decision. Id. Substantial evidence supporting the Commissioner's decision exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Although the administrative record might support multiple conclusions, the Court must uphold the Commissioner's findings when they are supported by substantial evidence. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991). Indeed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981) (internal quotations omitted).

III. DISCUSSION

Tessier argues that the ALJ erred in improperly discrediting the treating physician's medical opinion. (Docket No. 13 at 7). Tessier also claims that the ALJ erred in finding that Tessier medically improved as of May 1, 2009, because this finding was not based on substantial evidence. (Id. at 6). Finally, Tessier contends that the ALJ made several factual errors by misreading important pieces of medical evidence. (Id. at 5). Each of these arguments is addressed in turn.

Crediting the Treating Physician's Medical Opinion

The Commissioner generally must give controlling weight to opinions from treating physicians and psychologists. 20 C.F.R. § 404.1527(d)(2). "If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case

11

record, it must be given controlling weight; i.e., it must be adopted" by the ALJ. SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). However, even if a treating source's medical opinion is well-supported, the ALJ may not give controlling weight to that opinion "unless it also is not inconsistent with the other substantial evidence in the case record." Id. (internal quotations omitted). While a well-supported treating source's medical opinion need not be supported directly by the entirety of the evidence, there must be "no other substantial evidence in the case record that contradicts or conflicts with the opinion." Id. at *3. "Substantial evidence" is evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Rodriguez, 647 F.2d at 222. Thus, the evidence inconsistent with the treating source's opinion need not "prove by a preponderance that the opinion is wrong." SSR 92-2p, 1996 WL 374188, at *1.

Moreover, the Commissioner's Regulations state that an ALJ "will evaluate every medical opinion" received. 20 C.F.R. § 404.1527(d). Medical opinion evidence includes evidence from non-examining sources, including assessments of the claimant's residual functional capacity. Id. § 404.1527(f); DaSilva-Santos v. Astrue, 596 F. Supp. 2d 181, 189 (D. Mass. 2009) (stating that assessment of residual functional capacity must consider all evidence, including opinion evidence). If any of the evidence in the claimant's case record, including any medical opinion, is inconsistent with other evidence, the ALJ must "weigh all of the evidence" to make a determination. 20 C.F.R. § 404.1527(c)(2). Thus, the ALJ may rely on medical opinions submitted by non-examining sources in making a determination. See Lill v. Astrue, No. 10-10697-WGY, 2011 WL 4431145, at *9 (D. Mass. Sept. 23, 2011) (upholding the ALJ's decision relying on the opinion of a non-treating source). In weighing any medical opinion evidence that

is not entitled to controlling weight, the ALJ must consider several factors in determining what weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). These factors include: (1) whether the source had an examining relationship with the claimant; (2) whether the source had a treatment relationship with the claimant; (3) the relevant evidence presented by the medical source to support an opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the source is a specialist; and (6) any other factors the claimant presents that are relevant. Id. at § 404.1527(d)(1)-(6).

Tessier alleges that the ALJ committed an error of law in discrediting the opinion of his treating physician, Dr. Blanchette. (Docket No. 13 at 7). In determining that Tessier had the residual functional capacity to perform sedentary work, with specific limitations, the ALJ discredited Dr. Blanchette's opinion of Tessier's residual functional capacity, as given in the April 9, 2010, Medical Source Statement. (Tr. 16 (citing Ex. 12F)). On this form, Dr. Blanchette states that Tessier could perform work requiring him to carry less than ten pounds occasionally, could stand or walk less than two hours in an eight-hour work day, and could sit for less than six hours in an eight-hour work day. (Tr. 313-14). The report also stated that Tessier had serious postural limitations, "severe disc degeneration," "nerve damage, [and] muscle atrophy." (Tr. 314).

The ALJ found that Dr. Blanchette's opinion was inconsistent with the weight of the evidence, and that Dr. Blanchette's "opinion as to [Tessier's] limitations [was] also unsupported by his own treatment records." (Id.). Indeed, Dr. Blanchette's treatment records from the same day indicate that Tessier had a normal physical. Dr. Blanchette's form notes the following: "joints– no swelling, redness, nl [normal] ROM [range of motion];" "neuro– nl [normal]

13

sensation, motor, reflexes;" "vascular– periph[eral] pulses;" and "appearance– well developed, well nourished." (Tr. 319). These treatment notes, which describe Tessier as a generally healthy individual, clearly contradict Dr. Blanchette's opinion regarding Tessier's limitations, as given in the Medical Source Statement.

Other medical evidence contradicts Dr. Blanchette's opinion and/or is inconsistent with it. On February 26, 2009, Dr. Papavassiliou reported that Tessier was "doing very well," and that "his 'leg pain has completely gone.'" (Tr. 311). Two months later, on April 30, 2009, Dr. Papavassiliou noted that while Tessier still complained of "some pain" while sitting down, he was not experiencing leg pain, his x-rays "look great" and his "legs feel great." (Tr. 310). On October 8, 2009, Dr. Papavassiliou's notes indicate that Tessier again complained of back pain prior to this visit. (Tr. 309). However, this report clearly states that "during the exam, he says he has no problems. No back pain. His back pain has completely resolved." (Id.). The report also states that while an MRI shows a small post-operative fluid collection, "it is nothing significant." (Id.). Furthermore, Dr. Pappavassiliou observes that Tessier "might have some minimal issues with the right S1 nerve root . . . ." (Id.). Plaintiff dismisses the surgeon's note as merely stating surgery is not warranted. This reading, unlike the ALJ's interpretation of the note, is unsupported by the evidence. Additionally, the results of the EMG/NCV testing performed on September 8, 2009, by Dr. Albert A. Ackil indicate that Tessier did not suffer from the pain and limitations described by Dr. Blanchette's report. The test results led Dr. Ackil to conclude that Tessier had "mild chronic right L5-S1 radiculopathy," for which he recommended that Tessier "continue [his] current management of symptoms." (Tr. 304).

This evidence, taken together, is "substantial evidence in the case record that contradicts

or conflicts with" Dr. Blanchette's opinion in the Medical Source Statement. SSR 96-20, at *1. Accordingly, the ALJ was not required to give controlling weight to Dr. Blanchette's opinion. Id. The Court thus rejects Tessier's claim in this regard.

### The ALJ's Finding of Medical Improvement

Tessier also contends that the ALJ's finding of medical improvement as of May 1, 2009, was not based on substantial evidence. (Docket No. 13 at 6). Rather, Tessier asserts that the ALJ ignored the objective evidence from the MRI results, the EMG/NCV testing, and the opinion of the treating physician. (Id.). Tessier argues that the ALJ instead relied only on the opinion of Dr. Colb, the state agency physician who issued a "Physical Residual Functional Capacity Assessment" based on a review of Tessier's medical records. (Id.). Additionally, Tessier suggests that the ALJ incorrectly discredited his testimony that he needed to lie on his stomach for several hours per day. (Id. at 7).

In this case, the ALJ found, and this Court agrees, that the evidence in Tessier's case record was inconsistent, as Dr. Blanchette's April 9, 2010, Medical Source Statement conflicted with much of the evidence contained in the case record. See supra at 13; Tr. 16. The ALJ was thus required to "weigh all of the evidence" to make a determination about Tessier's medical improvement. 20 C.F.R. § 404.1527(c)(2). In weighing the evidence in the record, the ALJ was permitted to rely on the evidence submitted by Dr. Colb, as his opinion was a "medical opinion" as defined by the Commissioner's Regulations. Id. § 404.1527(a)(2); DaSilva-Santos, 596 F. Supp. 2d at 189.

The weight of the evidence in the case record supports Dr. Colb's February 3, 2009, assessment that Tessier should recover the capacity to perform sedentary work before May 1,

15

2009. (Tr. 294-301). Dr. Papavassiliou's treatment notes, discussed supra, indicate that Tessier had medically improved as of May 1, 2009. (See Tr. 309-311). Specifically, on April 30, 2009 – the day prior to the ALJ's determined date of medical improvement– Dr. Papavassiliou noted that although Tessier still complained of "some pain," he had no leg pain, his x-rays "look great" and his "legs feel great." (Tr. 310). Furthermore, Dr. Blanchette's own treatment notes from Tessier's April 9, 2010, physical indicate that Tessier had medically improved, as his physical was essentially normal. (Tr. 320).

The weight of the evidence thus clearly supports the ALJ's finding that medical improvement occurred as of May 1, 2009. As discussed above, the ALJ was not required to give controlling weight to Dr. Blanchette's opinion, in these circumstances, and there is no evidence that the ALJ ignored the objective evidence presented in the MRI or EMG/NCV testing. Rather, the results of these tests, and the medical opinion evidence, weighs in favor of a finding that Tessier had medically improved as of May 1, 2009. Because this is evidence that "a reasonable mind, reviewing the evidence in the record as a whole, could accept . . . as adequate to support [the ALJ's] conclusion," the ALJ's decision is one supported by substantial evidence. Rodriguez, 647 F.2d at 222. As such, this Court may not disturb the ALJ's finding. 42 U.S.C. § 405(g).

### The ALJ's Reading of the Medical Evidence

Finally, Tessier contends that the ALJ misread four pieces of evidence in determining that medical improvement occurred as of May 1, 2009: (1) Dr. Blanchette's office notes from Tessier's April 9, 2010, physical; (2) Dr. Papavassiliou's October 2009 report; (3) the MRI report from September 14, 2009; and (4) the EMG/NCV report from September 9, 2009.

(Docket No. 13). After a thorough review of each of these documents (Tr. 320, 309, 319, 304-08) and the record as a whole, there is nothing to suggests that the ALJ misread this evidence. The records, already described, speak for themselves. Tessier's third claim is rejected as well.[8]

IV. CONCLUSION

For the foregoing reasons, I DENY the Plaintiff's Motion to Reverse the Commissioner's Decision (Docket No. 13) and ALLOW the Commissioner's Motion for Order Affirming the Commissioner's Decision (Docket No. 15).

                                                  /s / Leo T. Sorokin
                                         UNITED STATES MAGISTRATE JUDGE

---

[8] Whether or not the ALJ was required to read the evidence as she did or reach the conclusions she expressed is not a question before the Court. As to the challenge to her decision, it is free of legal error and supported by substantial evidence.